1   SAMUEL CASTOR, ESQ.
    Nevada Bar No. 11532
2   sam@switch.com
    ANNE-MARIE BIRK, ESQ.
3   Nevada Bar No. 12330
    abirk@switch.com
4   SWITCH, LTD.
    7135 S. Decatur Blvd.
5   Las Vegas, Nevada 89118
    Telephone: (702) 444-4102
6   *Counsel for Plaintiff*
7

8                    **UNITED STATES DISTRICT COURT**
9                        **DISTRICT OF NEVADA**

10  SWITCH, LTD., a Nevada limited liability     Case No.:
    company,
11
                    Plaintiff,                   **COMPLAINT FOR DAMAGES AND**
12                                               **INJUNCTIVE RELIEF**
13  v.
                                                 (1)   Trademark Infringement under
14  SWITCH, INC., a Washington corporation,            15 U.S.C. § 1114
15                                               (2)   Trademark Dilution under 15 U.S.C. §
                                                       1125(c)
16                  Defendant.
                                                 (3)    Unfair Competition under
17                                                     15 U.S.C. § 1125(a)

18                                               (4)   Common Law Trademark Infringement

19                                               (5)   Deceptive Trade Practices under N.R.S.
                                                       598.0903, et seq.
20
                                                 (6)   Intentional Interference with
21                                                     Prospective Economic Advantage

22                                               (7)   Cybersquatting under
                                                       15 U.S.C. § 1125(d)
23

24          For its complaint against Defendant Switch, Inc., a Washington corporation

25  ("Defendant"), Plaintiff, Ltd. ("Plaintiff") complains and alleges as follows:

                                 **NATURE OF ACTION**
26
            This is an action for trademark infringement, trademark dilution, cybersquatting, and
27
    unfair competition under federal statutes, with pendent claims for common law trademark
28
    infringement, state deceptive trade practices, and intentional interference with prospective

                                             1

economic advantage.  Plaintiff seeks damages, attorneys' fees, costs as well as a request for preliminary and permanent injunctive relief.

## JURISDICTION

1.     This Court has subject matter jurisdiction over this case pursuant to 15 U.S.C. § 1121, 28 U.S.C.  §§1331 and 1338(a).  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

2.     This Court has personal jurisdiction over Defendant based upon the following: (a) Defendant operates a website on the Internet that is accessible to residents of the State of Nevada; (b) Defendant's domain name and corresponding website utilize Plaintiff's trademark SWITCH, which is owned by Plaintiff, a Nevada business; (c) Defendant provides its services under the mark SWITCH to consumers located in the State of Nevada; (d) upon information and belief Defendant has attended and promoted its services during events in Nevada; and (e) Defendant committed unlawful or tortious acts that it knew or should have known would cause injury to Plaintiff in the State of Nevada.

3.     Venue is proper in the United States District Court for the District of Nevada under 28 U.S.C. § 1391(b) and (c).  Venue lies in the unofficial Southern Division of this Court.

## PARTIES

4.     Plaintiff, Switch, Ltd. is a Nevada limited liability company organized and existing under the laws of the State of Nevada since 2000.

5.     Upon information and belief, Defendant, Switch, Inc. is a Washington corporation with its principle place of business located in Seattle, Washington since 2013.

## ALLEGATIONS COMMON TO ALL COUNTS

6.     Switch is a Las Vegas-based company that designs, constructs, and operates the world's most powerful telecommunication offerings, data centers and service technology ecosystems.

/ / /

/ / /

2

7.     Switch owns the mark SWITCH and multiple variants thereto, and has obtained federal trademark registrations for the SWITCH marks, including but not limited to:

a.   SWITCH for providing telecommunications connections to a global computer network and colocation services (U.S. Reg. No. 3,229,168);

b.   SWITCH for business consulting services regarding the use of other computer equipment, telecommunications services and data center services (U.S. Reg. No. 5,375,394);

c.   The design mark **switch**, for computer software and hardware for air quality, air conditioning, energy usage and security access and control monitoring and management systems (U.S. Reg. No. 5,266,044);

d.   SWITCH T-SCIF for providing telecommunications connections to the internet and colocation services (U.S. Reg. No. 3,547,908);

e.   SWITCH WDMD for colocation services (U.S. Reg. No. 3,540,816);

f.   SWITCH PRIME for providing telecommunications connections to the internet (U.S. Reg. No. 5356362);

g.   SWITCHNAP for providing telecommunications to the internet and colocation services (U.S. Reg. No. 3,547,909);

h.   SWITCHNAP WORLD for providing telecommunications connections to the internet and colocation services (3,880,400);

i.   SWITCHFORCE, for security guard services, designing security systems for others, security surveillance services, guard night-watch services, alarm center services, mobile and stationary security guard services, alarm rescue services, alarm rescue services; photographic surveillance services, detective agencies; interior decoration consultation, engineering and legal counseling services; development of bar-code systems; computer programming for others; computer software design for others, up-dating and maintenance of computer software (U.S. Reg. No. 3,942,121);

j.   SWITCH MICRO-MOD for business services, building construction services of environmentally controlled facilities for the computers and telecommunications equipment of others (U.S. Reg. No. 4,062,244),

k.   SWITCHSERVE for data center migration services, computer equipment deployment within a colocation facility, managed information technology services, computer network and software design for others, computer network and software consulting services, computer consultation in the field of computer security, remote monitoring of computer system for others for technical purposes, backup computer programs and facilities; analysis and design of technical security and firewall systems for computer networks; computer consultation in the areas of computer network infrastructure system and analysis and integration, all provided via a central network operations center (U.S. Reg. No. 4,058,546);

l.   SWITCHMOD for colocation facility development services (U.S. Reg. No. 3,984,525);

m.   SWITCH L.D.C. for providing management of building operation systems; computer software and hardware for energy use management, air conditioning and energy usage monitoring and management systems (U.S. Reg. No. 3,984,524);

n.   SWITCHCLOUD I.C.E. for telecommunication access services, computer services, and cloud computing (U.S. Reg. No. 4,062,248);

o.   SWITCHSTACK for computer services, cloud computing, computer services, rental of computing and data storage facilities of variable capacity, and providing non-downloadable software accessible over a global computer network for use in managing computer applications of others (U.S. Reg. No. 4,107,725);

p.   SWITCH IC3 for telecommunication access services, computer services, cloud computing, rental of computing and data storage facilities of variable

capacity, namely, database servers, to third parties; providing non-downloadable software accessible over a global computer network for use in managing computer applications of others (U.S. Reg. No. 4,104,345);

q.  SWITCHCUBE for telecommunication access services, computer services, cloud computing, rental of computing and data storage facilities of variable capacity, namely, database servers, to third parties; providing non-downloadable software accessible over a global computer network for use in managing computer applications of others (U.S. Reg. No. 4,335,332);

r.  SWITCHSCRIBE for online journal, namely, blogs featuring text, audio, video, graphic works, news, commentary, photos, mini-essays, project updates, and non-fiction regarding the data center industry, design, practices and events (U.S. Reg. No. 4,217,085); and

s.  SWITCHGAUNTLET for consulting services for customers, regarding colocation facility services and internet services (U.S. Reg. No. 4,516,916).

8.    None of these federal trademark registrations have been abandoned, canceled or revoked.

9.    Since Plaintiff commenced operations, it has continuously used the SWITCH trademark and its related marks in connection with advertising and promoting its technology services including hyper-secure telecommunication, colocation and cloud computing technology and services in the United States and around the world.  In particular, Plaintiff has provided the following technology services under the SWITCH brand:

a.  Direct sale and resale access to over 60 telecommunications carriers;

b.  Telecommunication and carrier services including VoIP, SIP, Voice, DSL, Ethernet, MPLS, IP and Transport services through Plaintiff's telecommunications buying power known as the Combined Ordering Retail Ecosystem ("CORE");

c.  CORE services to over 1,000 customers resident in the Plaintiff ecosystem;

d.   A multi-million dollar fiber-loop ring in Las Vegas, comprising well over 100 telecommunication fibers;

e.   Cloud based services through a $9 million v-block;

f.   Sale of cloud services to over 1,000 customers resident in the Plaintiff ecosystem; and

10.   Direct cross-connect and network access to over 50 cloud and managed services providers in its facilities, many of which who have chosen Plaintiff for their flagship cloud deployments.

11.   The SWITCH name is well-known and respected in the technology realm and has been covered by CNN Money, Vegas Inc., the Wall Street Journal, and CNBC, among other outlets.

12.   Switch has received various awards for Rob Roy's inventions, including being ranked as the World's No. 1 cloud campus by industry publication Data Center Frontier. Switch was ranked above Google, Amazon, Apple, Microsoft, Facebook, DuPont Fabors, Digital Realty, the NSA, and Equinix.

13.   SWITCH recently was highlighted as the most sustainable technology company by Greenpeace in its Clicking Clean report, which ranked Switch highest for sustainability above than Apple, Google, Amazon, Facebook, Netflix and other tech companies.

14.   Plaintiff's business also includes a number of other ventures which are all marketed and fall under the SWITCH Brand and umbrella.

15.   Plaintiff founder, Rob Roy, has over 500 patented and patent pending claims for Plaintiff's services.

16.   Plaintiff's customers include an array of Fortune 100 and Fortune 500 companies, which include online applications, software and technology companies, and financial and banking institutions. Customer include Intel, Amazon, Microsoft, eBay, Disney, Sony, Fox, Machine Zone, and many hundreds and hundreds more.  A partial list of Switch's

customers is available at http://www.switch.com/clients/. Plaintiff's customers are of the same or similar geographic and demographic groups that Defendant is marketing.

17.     Plaintiff is the only Tier IV Gold certified colocation facility in the United States according to the Uptime Institute, achieving the honor twice.[1]

18.     Plaintiff has expended significant resources to advertise and promote the SWITCH marks in print, broadcast media and on the internet through the various Plaintiff websites. These websites include <switch.com>, <switch.org>, <switch.co>, <switch.net>, <switch.capital>, <switchexchange.com> and are accessible throughout the United States and around the world.  A true and correct copy of the home page for the Plaintiff website is attached hereto as **Exhibit 1** and is incorporated by this reference.  In addition, Plaintiff has made extensive use of the SWITCH marks on, among other things, the internet, presentations, customer tours, conferences, seminars, webinars, direct mailings, and electronic communications.

19.     In 2017, Plaintiff became a publicly traded company and is being traded on the New York Stock Exchange (NYSE) with the ticker symbol "SWCH".

20.     Based on its federal trademark registrations and extensive use, Plaintiff owns the exclusive right to use SWITCH in connection with technology, specifically including software and computing services, cloud services, telecommunication services, power services and colocation services.

21.     The uniqueness of the SWITCH mark and the extensive advertising and promotion by Plaintiff have resulted in the SWITCH name and mark being distinctive and famous.  See Order Granting Stipulation for Entry of Permanent Injunction against Firespotter Labs a/k/a Switch Communications, Inc., attached hereto as **Exhibit 2**.

22.     Defendant, Switch [] is a Washington based business specializing in the online payment methods.

---

[1] See https://uptimeinstitute.com/TierCertification/operational-sustainability-certifications.php

23.     Upon information and belief, on or about August 28, 2014, Defendant launched its website <switchme.com> using the Infringing Domain Name.  The website incorporates Plaintiff's SWITCH trademark and a confusingly similar redesign of the SWITCH logo and karma wheel trademark [⚡ switch] to identify Defendant's software application.  See Printout of Defendant's homepage, attached hereto as **Exhibit 3**.

24.     On or about December 28, 1997, the domain name <switchme.com> ("Infringing Domain Name") was registered by GoDaddy.com, LLC ("GoDaddy"), a Delaware company headquartered in Arizona.  A true and correct copy of the Whois Information for the Infringing Domain Name is attached hereto as **Exhibit 4**.

25.     Upon information and belief, GoDaddy registered many .com domain names at or prior to their release to the public.  GoDaddy then either sells or licenses those domain names to third parties.

26.     Upon information and belief, Defendant subsequently acquired or licensed the Infringing Domain Name from GoDaddy.

27.     On or about August 28, 2014, Defendant launched its website <switchme.com> using the Infringing Domain Name.  The website incorporates Plaintiff's SWITCH trademark and a confusingly similar redesign of the SWITCH logo trademark [⚡ switch] to identify Defendant's software application, which includes an App and web browser extension designed for credit card users.  See Printout of Defendant's homepage, attached hereto as **Exhibit 3**.

28.     Defendant has also created Facebook, Twitter, Instagram, and LinkedIn pages to advertise its services under the SWITCH mark.  See Printouts of Defendant's Twitter, Facebook, Instagram, and LinkedIn pages, attached hereto as **Exhibit 5**.

29.     Defendant has only been using the SWITCH company name and logo for a short time.  The first crawling image saved by the Internet Archive Wayback Machine using the SWITCH company name dates back to August 28, 2014.  See Printout of internet archive, attached hereto as **Exhibit 6**.

/ / /

30.     Defendant's domain name and website utilizes the Plaintiff's federally registered SWITCH trademark and trademarked SWITCH logo in a manner that has caused actual confusion, and is likely to continue to cause consumer confusion as to source and/or falsely implies an affiliation with Plaintiff's telecommunications, colocation and cloud computing services.  See actual confusion as **Exhibit 7**.

31.     Defendant is not authorized to use Plaintiff's SWITCH trademarks in connection with its technology services.

32.     Plaintiff became aware of the infringing nature of the Infringing Domain Name and Defendant's infringing website in or about March 2017.

33.     After several unsuccessful attempts to make contact, Plaintiff sent a cease and desist letter to Defendant via certified mail and electronic mail on November 20, 2017, requesting that Defendant immediately cease use of the Infringing Domain Name and Plaintiff's SWITCH trademark on its website and all social media platforms.  Plaintiff also requested that Defendant transfer the Infringing Domain Name to Plaintiff.  See November 20, 2017 Demand Letter from Anne-Marie Birk, attached hereto as **Exhibit 8**.

34.     Plaintiff further attempted to contact Defendant by way of the <switchme.com> website via the support page on or about December 5, 2017.  Plaintiff further attempted to contact Katherine Chavez via phone on or about December 21, 2017.  Plaintiff left a voice message which was never returned.

35.     To date, Defendant has not responded to emails or phone calls placed by Plaintiff.  By registering and/or using a business name and domain name containing Plaintiff's trademark, Defendant was and is attempting to create an association between Plaintiff's business, the Infringing Domain Name and the Plaintiff's famous trademarks.

36.     By registering and/or using a domain name containing the entirety of Plaintiff's trademark, Defendant was and is attempting to trade on the goodwill of Plaintiff.

37.     By registering and/or using a domain name containing the entirety of Plaintiff's trademark, Defendant was and is attempting to divert Internet users looking for Plaintiff's websites to its own website.

38.     By using a logo containing the entirety of Plaintiff's trademark and a design that is confusingly similar to Plaintiff's trademark logo design, Defendant was and is infringing upon Plaintiff's federal trademark rights.

39.     Plaintiff's marks at issue in this case were distinctive at the time Defendant began use of its domain name.

40.     Upon information and belief, the Defendant registered the Infringing Domain Name with the bad faith intent to profit from Plaintiff's marks.

**FIRST CLAIM FOR RELIEF**
(Trademark Infringement Under the Lanham Act, 15 U.S.C. § 1114)

41.     Plaintiff incorporates allegations in the preceding paragraphs as if fully set forth herein.

42.     Defendant is using, or intends to use in commerce, a name, logo, and domain name which contain Plaintiff's trademarks, and, thus is confusingly similar to Plaintiff's names and trademarks.

43.     Defendant's use in commerce of an identical and/or confusingly similar mark to Plaintiff's trademarks for Defendant's services, and associated website as described above, constitutes a reproduction, copying, counterfeiting, and colorable imitation of Plaintiff's trademarks in a manner that is likely to cause confusion or mistake or is likely to deceive consumers.

44.     By using Plaintiff's mark and/or marks confusingly similar to Plaintiff's trademarks with the knowledge that Plaintiff owns and has used, and continues to use, its trademarks in Las Vegas, across the United States, and around the world, Defendant has intended to cause confusion, cause mistake, or deceive consumers.

45.     Defendant's use of Plaintiff's mark and/or a mark that is confusingly similar to Plaintiff's trademarks has created a likelihood of confusion among consumers who may falsely believe that Defendant's business or website is associated with Plaintiff's telecommunications, colocation and cloud computing services or that Plaintiff sponsors or approves of Defendant's services or commercial activities.

46.     Defendant's unauthorized use of the SWITCH mark in interstate commerce as described above constitutes trademark infringement under 15 U.S.C. § 1114(1).

47.     As a direct and proximate result of Defendant's infringement, Plaintiff has suffered, and will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.

48.     Defendant's acts of infringement will cause further irreparable injury to Plaintiff if Defendant is not restrained by this Court from further violation of Plaintiff's rights.  Plaintiff has no adequate remedy at law.

### SECOND CLAIM FOR RELIEF
(Trademark Dilution Under 15 U.S.C. § 1125(c))

49.     Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

50.     Through Plaintiff's continuous and extensive use, Plaintiff's SWITCH mark has become famous and distinctive for Plaintiff's services.

51.     Defendant began using Plaintiff's SWITCH mark in connection with its software and technology services after Plaintiff's SWITCH mark became famous.

52.     Defendant's use of Plaintiff's world-famous SWITCH mark has and will cause dilution of the distinctive quality of Plaintiff's trademarks and will otherwise cause irreparable injury to Plaintiff's business, reputation and goodwill.

53.     As a direct and proximate result of Defendant's dilution of Plaintiff's trademarks, Plaintiff has suffered, and will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.

54.     Defendant's acts of dilution will cause further irreparable injury to Plaintiff if Defendant is not restrained by this Court from further violation of Plaintiff's rights.  Plaintiff has no adequate remedy at law.

/ / /

/ / /

/ / /

**THIRD CLAIM FOR RELIEF**
(Unfair Competition under the Lanham Act, 15 U.S.C. § 1125(a))

55.     Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

56.     Defendant's use in commerce of marks identical and/or confusingly similar to Plaintiff's trademarks in connection with Defendant's services, website, and Internet domain name, constitutes a false designation of origin and/or a false or misleading description or representation of fact, which is likely to cause confusion, cause mistake, or deceive as to affiliation, connection, or association with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's services or commercial activities.

57.     Defendant's use in commerce of Plaintiff's marks and/or marks confusingly similar to Plaintiff's trademarks with the knowledge that Plaintiff owns and has used, and continues to use, its trademarks constitutes intentional conduct by Defendant to make false designations of origin and false descriptions about Defendant's services and commercial activities.

58.     As a direct and proximate result of such unfair competition, Plaintiff has suffered, and will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.

**FOURTH CLAIM FOR RELIEF**
(Common Law Trademark Infringement)

59.     Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

60.     By virtue of having used and continuing to use its trademarks, Plaintiff has acquired common law rights in those marks.

61.     Defendant's use of marks identical and/or confusingly similar to Plaintiff's trademarks infringes Plaintiff's common law rights in its trademarks, and this use is likely to cause confusion, mistake, or deception among consumers, who will believe that Defendant's services, website and/or Internet domain name originate from, or are affiliated with, or

endorsed by Plaintiff when, in fact, they are not.

62.     As a direct and proximate result of Defendant's infringement of Plaintiff's common law trademark rights under Nevada and other common law, Plaintiff has suffered, and will continue to suffer, monetary damages and irreparable injury to its business, reputation, and goodwill.

**FIFTH CLAIM FOR RELIEF**
(Deceptive Trade Practices Under N.R.S. § 598.0915)

63.     Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

64.     Upon information and belief, in the course of conducting their business, Defendant knowingly made false representations as to affiliation, connection and/or association with Plaintiff by using a mark confusingly similar to Plaintiff's trademarks and otherwise engaging in deceptive trade practices.

65.     As the direct and proximate result of Defendant's conduct, Plaintiff suffered, and will continue to suffer, monetary damages and irreparable injury to its business, reputation, and goodwill.

**SIXTH CLAIM FOR RELIEF**
(Intentional Interference with Prospective Economic Advantage)

66.     Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

67.     Upon information and belief, at the time Defendant adopted and began using Plaintiff's names and marks and since that time, Defendant knew and has known that Plaintiff is in the business of providing software, telecommunications, colocation and cloud computing services.

68.     Upon information and belief, Defendant committed acts intended or designed to disrupt Plaintiff's prospective economic advantage arising from advertising and/or providing these services.

/ / /

69.     Defendant's actions have disrupted or are intended to disrupt Plaintiff's business by, among other things, diverting web users away from Plaintiff's websites.

70.     Defendant has no legal right, privilege or justification for its conduct.

71.     As a direct and proximate result of Defendant's intentional interference with Plaintiff's prospective economic advantage, Plaintiff has suffered, and will continue to suffer, monetary damages and irreparable injury.

72.     Based on the intentional, willful and malicious nature of Defendant's actions, Plaintiff is entitled to recover exemplary damages and reasonable attorneys' fees and costs incurred in connection with this action.

### SEVENTH CLAIM FOR RELIEF
(Cybersquatting under the Lanham Act, 15 U.S.C. § 1125(d))

73.     Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

74.     Defendant registered, trafficked in, and/or used a domain name that is identical or confusingly similar to and/or dilutive of Plaintiff's trademarks, which were distinctive and/or famous at the time of registration of the Infringing Domain Name.

75.     Defendant has or had a bad-faith intent to profit from Plaintiff's trademarks.

76.     As a direct and proximate result of such conduct, Plaintiff has suffered, and will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that the Court grant the following relief:

A.      A preliminary and permanent injunction prohibiting Defendant, its respective officers, agents, servants, employees and/or all persons acting in concert or participation with them, or any of them, from: (1) using Plaintiff's trademarks or confusingly similar variations thereof, alone or in combination with any other letters, words, letter strings, phrases or designs, in commerce or in connection with any business or for any other purpose (including,

but not limited to, on websites, including social media websites, and in domain names); and (2) registering, owning, leasing, selling, or trafficking in any domain names containing Plaintiff's trademarks or confusingly similar variations thereof, alone or in combination with any other letters, words, phrases or designs;

B.    A preliminary and permanent injunction requiring the current domain name registrar to transfer the Infringing Domain Name to Plaintiff's counsel;

C.    A preliminary and permanent injunction requiring the Defendant to remove any and all content from the <switch.co> website and any similar website, including social media pages, they own and/or operate which contains Plaintiff's trademarks or confusingly similar variations thereof;

D.    An award of compensatory, consequential, statutory, and punitive damages to Plaintiff in an amount to be determined at trial;

E.    An award of interest, costs and attorneys' fees incurred by Plaintiff in prosecuting this action; and

F.    All other relief to which Plaintiff is entitled.

DATED: this 23ʳᵈ day of April, 2018.

SWITCH, LTD.

SAMUEL CASTOR, ESQ.
Nevada Bar No. 11532
ANNE-MARIE BIRK, ESQ.
Nevada Bar No. 12330
7135 S. Decatur Blvd.
Las Vegas, Nevada 89118
702-444-4102
sam@switch.com
abirk@switch.com
*Attorney for Plaintiff*

15

# EXHIBIT 1

**switch**

GALLERY   SUSTAINABILITY   DATA CENTER DESIGNS   PRIME LOCATIONS   SOLUTIONS   ABOUT   CONTACT   TOUR   🔍



TSC 1000, Switch LAS VEGAS 8 Data Center

‹ ›

# POWERING THE FUTURE OF THE CONNECTED WORLD®

### The World's Best Priced Colocation

How can Switch build the highest rated data centers in the world and still beat our competitors pricing 100% of the time? It's simple... Rob Roy designed, patented and manufactures 80% of his data center modules completely eliminating 60% of the mark up inherent with building a data center!

Switch is a global technology infrastructure company whose core business is the design, construction and operation of ultra-advanced data centers, enabling the most powerful technology ecosystems on the planet. We believe that the future progress of humanity depends on the sustainable growth of the Internet. As more people, businesses, governments and devices come online, the need for advanced data centers increases, as does the growing need to power those data centers. At Switch, every team member is driven to produce real results for our clients – technologically and financially. Our technology collaboration ecosystem gives our clients access to virtually unlimited options for innovation, economies of scale, risk mitigation, sustainability and investment protection.

LEARN MORE

## Switch NEWS



**Switch Announces Massive PRIME Data Center Campus in Atlanta**

At more than 1 million square feet the multibillion-dollar campus will be one of four Switch PRIMES in North America ATLANTA — Switch, the global technology solutions corporation that is POWERING THE FUTURE OF THE CONNECTED WORLD®, today announced its plan to develop a more than 1 million square foot PRIME Data Center campus in Atlanta to meet client demand in...



**Michigan Governor Declares Switch PYRAMID Data Center "Awesome" at Official Grand Opening**

Michigan Governor Rick Snyder joined Stella and Rob Roy, and a host of the state's political, economic development and local leadership to "cut the ribbon" marking the official grand opening of the iconic Switch PYRAMID data center in Grand Rapids, Michigan. "This was an iconic building in Michigan. To see it transformed by Switch into the most advanced, largest data...

LEARN MORE                    LEARN MORE



**Switch GRAND RAPIDS Now Open: The Largest, Most Advanced Data Center Campus in the Eastern U.S.**

First phase of the 1.8 million-square-foot data center campus completed and now open, watch The Pyramid Campus video, Grand Rapids, Mich. — Switch, a globally recognized leader in future-proof data center design, superscale cloud, unparalleled telecom gateways and energy sustainability, today announced the opening of the largest, most advanced data center campus in the Eastern U.S. –– Switch GRAND RAPIDS...



**Switch TAHOE RENO Now Open: Largest, Most Advanced Data Center Campus in the World**

Switch, a globally recognized leader in future-proof datacenter design, superscale cloud, unparalleled telecom gateways and energy sustainability, opens – The Citadel Campus. Designed for up to 7.2 million square feet of data center space and up to 650 megawatts (MW) of power...

LEARN MORE                    LEARN MORE



**Greenpeace: Switch Scores Highest Among Any Class of Company**

Greenpeace Clicking Clean Report recognizes Switch as the definitive leader among colocation operators, making Switch the first multi-tenant data center provider in the world to receive all A grades in the six-year history of Greenpeace's Clicking Clean report. The grades published in the 2017 report reflect Switch's use of 100 percent renewable energy...



**Switch Announces Its New Tier 5® Data Center Standard**

Recognizing shortcomings in the way data centers are evaluated, Switch is introducing a new proprietary Tier 5® Data Center Standard that it expects will be the most comprehensive standard in the industry...

LEARN MORE                    LEARN MORE

---

Looking for a sales contact? Visit the sales center.    SALES CENTER

---

## switch

A recognized world leader in colocation design, development and mission critical operations.

| GALLERY | SUSTAINABILITY | CONTACT | TOUR |
|---|---|---|---|
| Photos | Greenpeace | Sales Center | Schedule A Tour |
| Videos | Sustainable by Design | Sales Log in | |

| DATA CENTER DESIGNS | PRIME LOCATIONS | SOLUTIONS | ABOUT |
|---|---|---|---|
| The Rob Roy Factor | Switch LAS VEGAS | Switch COLO | About |
| Patent Book | Switch TAHOE RENO | Switch CONNECT® | Executive Team |
| Truth In Technology® | Switch GRAND RAPIDS | Switch CLOUD | Thought Leadership |
| Sustainability | SUPERNAP ITALIA | Switch SAFE® | Social Responsibility |
| Multi-Tenant | SUPERNAP THAILAND | Switch SUPERLOOP® | Testimonials |
| Build-to-Suit | | Switch CITIES | Press Release |
| Clients | | Switch UNIVERSITY | Switch NEWS |
| Acceptable Use Policy | | | Careers |
| | | | Investors |

EXHIBIT 2

MARK G. TRATOS, ESQ.
Nevada Bar No. 1086
tratosm@gtlaw.com
LAURI S. THOMPSON, ESQ.
Nevada Bar No. 6846
thompsonl@gtlaw.com
SHAUNA L. NORTON, ESQ.
Nevada Bar No. 11320
nortons@gtlaw.com
GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002
*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| SWITCH, LTD. a/k/a SWITCH COMMUNICATIONS GROUP, LLC, a Nevada limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> FIRESPOTTER LABS a/k/a SWITCH COMMUNICATIONS, INC., a Delaware corporation, <br><br> Defendant. | Case No.:  2:14-cv-01727-APG-NJK <br><br> **ORDER GRANTING STIPULATION FOR ENTRY OF PERMANENT INJUNCTION** |

This Court having reviewed and considered the Stipulation for Entry of Permanent Injunction submitted by Plaintiff Switch Ltd. aka Switch Communications Group, LLC, ("Plaintiff Switch") and Defendant Firespotter Labs aka Switch Communications, Inc. ("Firespotter") by and through their respective counsel of record, and for good cause appearing therefore:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.     This Decree shall be the final judgment with prejudice of all claims each of the parties has raised against the other in this lawsuit, including all claims and counterclaims.

2.     Plaintiff Switch designs, constructs, and operates the world's most powerful telecommunications offerings, data centers, and service technology ecosystems.

*LV 420640111v1*

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

3.     Plaintiff Switch owns the mark SWITCH and multiple variants thereto, and has continuously been using the trademark SWITCH in connection with its data center, colocation, telecommunications, and cloud computing services in commerce since at least as early as November 30, 2003.

4.     Plaintiff Switch owns multiple U.S. federal trademark registrations for its "SWITCH" marks, including but not limited to, SWITCH (U.S. Reg. No. 3,229,168), SWITCH T-SCIF (U.S. Reg. No. 3,547,908), SWITCH WDMD (U.S. Reg. No. 3,540,816), SWITCHNAP (U.S. Reg. No. 3,547,909), SWITCHNAP WORLD (U.S. Reg. No. 3,880,400), SWITCHFORCE (U.S. Reg. No. 3,942,121), SWITCH MICRO-MOD (U.S. Reg. No. 4,062,244), SWITCHSERVE (U.S. Reg. No. 4,058,546), SWITCHMOD (U.S. Reg. No. 3,984,525), SWITCH L.D.C. (U.S. Reg. No. 3,984,524), SWITCHCLOUD I.C.E. (U.S. Reg. No. 4,062,248), SWITCHSTACK (U.S. Reg. No. 4,107,725), SWITCH IC3 (U.S. Reg. No. 4,104,345), SWITCHCUBE (U.S. Reg. No. 4,335,332), SWITCHSCRIBE (U.S. Reg. No. 4,217,085), SWITCHGAUNTLET (U.S. Reg. No. 4,516,916) SWITCHGAUNTLET (U.S. Reg. No. 4,516,916) SWITCHWORKS (U.S. Reg. No. 3,942,079), SWITCHSAFE (U.S. Reg. No. 3,946,128), SWITCHMACROMOD (U.S. Reg. No. 3,984,966), SWITCH CLOUD AI (U.S. Reg. No. 4,050,103)  SWITCHEDUP (U.S. Reg. No. 4,062,245), SWITCHCORE (U.S. Reg. No. 4,062,254), and SWITCHMICRO-MOD (U.S. Reg. No. 4,137,600)

(collectively hereinafter referred to as the "Switch Marks").

5.     Based on Plaintiff Switch's federal registrations and extensive use, Plaintiff Switch owns the exclusive right to use the mark SWITCH and the Switch Marks in connection with telecommunications, data center, colocation, and cloud computing services.

6.     The extensive advertising and promotion by Plaintiff Switch of the Switch Marks throughout the United States and around the world have resulted in the SWITCH name and mark being distinctive and famous for telecommunications services, data center, colocation, and cloud computing services.

7.     On or about October 1, 2014, Firespotter, a technology start-up company located in San Francisco, California, began providing a cloud-based telephone system under the marks SWITCH and SWITCH.CO.  In connection with its services, on or around July 27, 2014, Firespotter

LV 420640111v1

1    acquired the Internet domain name <switch.co> and created the corresponding website.

2         THEREFORE, IT IS FURTHER ORDERED that Plaintiff Switch's request for Permanent

3    Injunction is GRANTED, subject to the transition period agreed upon by the parties. Firespotter, its

4    respective officers, agents, servants, employees, affiliates, and/or all persons acting in concert or

5    participation with it, are permanently enjoined (1) from using Plaintiff Switch's SWITCH trademark,

6    the Switch Marks, or confusingly similar variations thereof, alone or in combination with any other

7    letters, words, letter strings, phrases or designs, in commerce or in connection with any business or

8    for any other purpose (including, but not limited to, on web sites and in domain names); and (2) from

9    registering, owning, leasing, selling or trafficking in any domain name containing Plaintiff Switch's

10   Switch Marks or confusingly similar variations thereof, alone or in combination with any other

11   letters, words, phrases or designs as the SWITCH mark is a famous mark.

12        The claims Firespotter has raised in this lawsuit are DENIED with prejudice.

13        IT IS SO ORDERED this 29th day of February, 2016.

14

15                                          _____

16                                          United States District Court Judge

17

18   Respectfully submitted by:

19   GREENBERG TRAURIG, LLP

20
     /s/ Lauri S. Thompson
21   Mark G. Tratos, Esq.
     Lauri S. Thompson, Esq.
22   Shauna L. Norton, Esq.
     3773 Howard Hughes Pkwy.
23   Suite 400 North
     Las Vegas, NV 89169
24   *Attorneys for Plaintiff*

25

26

27

28

*GREENBERG TRAURIG, LLP*
*3773 Howard Hughes Parkway, Suite 400 North*
*Las Vegas, Nevada 89169*
*Telephone: (702) 792-3773*
*Facsimile: (702) 792-9002*

LV 420640111v1

EXHIBIT 3

 switch

Users    Financial Institutions    Merchants    Security    Log in    GET THE BETA

The fastest and easiest way to sign up, sign in, checkout, and switch
payment methods across thousands of your favorite websites.



Switch Payment
Methods

## FEATURES



**Automated Card Updating**
Keep your payment information up-to-date
and avoid service interruptions.

**Autofill**
Make your checkouts easier without repetitive,
error-prone typing.

**Card-to-site Visibility**
Always know which sites have your card, and
manage card-to-site relationships.

**Auto-login**
Access your online accounts with one click
from the Switch dashboard.



Let's face it...
replacing a credit or debit
card online is painful.

**WATCH THE VIDEO »**



switch

Support    |    FAQ    |    About Us    |    Our Team    |    Blog    |    Careers    |    Contact us    |    Press

Copyright 2017 SWITCH | All Rights Reserved. | Terms of use | Privacy Policy

EXHIBIT 4









DOMAINS    HOSTING    CLOUD ^NEW^    WEBSITES    EMAIL    SECURITY    WHOIS    SUPPORT    👤 LOGIN    🛒 0

## switchme.com

Updated 1 second ago ↻

### DOMAIN INFORMATION

| | |
|---|---|
| Domain: | switchme.com |
| Registrar: | GODADDY.COM, LLC |
| Registration Date: | 1997-12-28 |
| Expiration Date: | 2017-12-27 |
| Updated Date: | 2014-05-16 |
| Status: | clientDeleteProhibited |
| | clientRenewProhibited |
| | clientTransferProhibited |
| | clientUpdateProhibited |
| Name Servers: | ns-1338.awsdns-39.org |
| | ns-150.awsdns-18.com |
| | ns-1952.awsdns-52.co.uk |
| | ns-595.awsdns-10.net |

### REGISTRANT CONTACT

| | |
|---|---|
| Name: | Registration Private |
| Organization: | Domains By Proxy, LLC |
| Street: | DomainsByProxy.com |
| | 14455 N. Hayden Road |
| City: | Scottsdale |
| State: | Arizona |
| Postal Code: | 85260 |
| Country: | US |
| Phone: | +1.4806242599 |
| Fax: | +1.4806242598 |
| Email: | SWITCHME.COM@domainsbyproxy.com |

### ADMINISTRATIVE CONTACT

| | |
|---|---|
| Name: | Registration Private |
| Organization: | Domains By Proxy, LLC |
| Street: | DomainsByProxy.com |
| | 14455 N. Hayden Road |
| City: | Scottsdale |
| State: | Arizona |
| Postal Code: | 85260 |
| Country: | US |
| Phone: | +1.4806242599 |
| Fax: | +1.4806242598 |
| Email: | SWITCHME.COM@domainsbyproxy.com |

### TECHNICAL CONTACT

| | |
|---|---|
| Name: | Registration Private |
| Organization: | Domains By Proxy, LLC |
| Street: | DomainsByProxy.com |
| | 14455 N. Hayden Road |



Sale

**.club**

~~$15.88~~  $0.98

BUY NOW

*Offer ends 31st March 2017 UTC



Hot Deals!

**.link**

.LINK @ $2.48 ~~$9.88~~

● ● ● ● ● ● ● ● ● ● ● ● ● ● ●



Web Hosting

Easy. Reliable. Affordable.

- Unlimited Disk Space
- Unlimited Data Transfer
- Unlimited Databases
- Unlimited Email Accounts
- 30 Day Money Back Guarantee

View Plans

Starts @ $3.88/mo

| City: | Scottsdale |
| State: | Arizona |
| Postal Code: | 85260 |
| Country: | US |
| Phone: | +1.4806242599 |
| Fax: | +1.4806242598 |
| Email: | SWITCHME.COM@domainsbyproxy.com |

## RAW WHOIS DATA

```
Domain Name: SWITCHME.COM
Registry Domain ID: 2804837_DOMAIN_COM-VRSN
Registrar WHOIS Server: whois.godaddy.com
Registrar URL: http://www.godaddy.com
Update Date: 2014-05-16T04:19:40Z
Creation Date: 1997-12-28T05:00:00Z
Registrar Registration Expiration Date: 2017-12-27T05:00:00Z
Registrar: GoDaddy.com, LLC
Registrar IANA ID: 146
Registrar Abuse Contact Email: abuse@godaddy.com
Registrar Abuse Contact Phone: +1.4806242505
Domain Status: clientTransferProhibited
http://www.icann.org/epp#clientTransferProhibited
Domain Status: clientUpdateProhibited http://www.icann.org/epp#clientUpdateProhibited
Domain Status: clientRenewProhibited http://www.icann.org/epp#clientRenewProhibited
Domain Status: clientDeleteProhibited http://www.icann.org/epp#clientDeleteProhibited
Registry Registrant ID: Not Available From Registry
Registrant Name: Registration Private
Registrant Organization: Domains By Proxy, LLC
Registrant Street: DomainsByProxy.com
Registrant Street: 14455 N. Hayden Road
Registrant City: Scottsdale
Registrant State/Province: Arizona
Registrant Postal Code: 85260
Registrant Country: US
Registrant Phone: +1.4806242599
Registrant Phone Ext:
Registrant Fax: +1.4806242598
Registrant Fax Ext:
Registrant Email: SWITCHME.COM@domainsbyproxy.com
Registry Admin ID: Not Available From Registry
Admin Name: Registration Private
Admin Organization: Domains By Proxy, LLC
Admin Street: DomainsByProxy.com
Admin Street: 14455 N. Hayden Road
Admin City: Scottsdale
Admin State/Province: Arizona
Admin Postal Code: 85260
Admin Country: US
Admin Phone: +1.4806242599
Admin Phone Ext:
Admin Fax: +1.4806242598
Admin Fax Ext:
Admin Email: SWITCHME.COM@domainsbyproxy.com
Registry Tech ID: Not Available From Registry
Tech Name: Registration Private
Tech Organization: Domains By Proxy, LLC
Tech Street: DomainsByProxy.com
Tech Street: 14455 N. Hayden Road
Tech City: Scottsdale
Tech State/Province: Arizona
Tech Postal Code: 85260
Tech Country: US
Tech Phone: +1.4806242599
Tech Phone Ext:
Tech Fax: +1.4806242598
Tech Fax Ext:
Tech Email: SWITCHME.COM@domainsbyproxy.com
Name Server: NS-1338.AWSDNS-39.ORG
Name Server: NS-595.AWSDNS-10.NET
Name Server: NS-1952.AWSDNS-52.CO.UK
Name Server: NS-150.AWSDNS-18.COM
DNSSEC: unsigned
URL of the ICANN WHOIS Data Problem Reporting System: http://wdprs.internic.net/
>>> Last update of WHOIS database: 2017-03-24T20:00:00Z <<<

For more information on Whois status codes, please visit
https://www.icann.org/resources/pages/epp-status-codes-2014-06-16-en

The data contained in GoDaddy.com, LLC's WhoIs database,
while believed by the company to be reliable, is provided "as is"
with no guarantee or warranties regarding its accuracy.  This
information is provided for the sole purpose of assisting you
in obtaining information about domain name registration records.
Any use of this data for any other purpose is expressly forbidden without the prior
written
permission of GoDaddy.com, LLC.  By submitting an inquiry,
you agree to these terms of usage and limitations of warranty.  In particular,
you agree not to use this data to allow, enable, or otherwise make possible,
dissemination or collection of this data, in part or in its entirety, for any
purpose, such as the transmission of unsolicited advertising and
and solicitations of any kind, including spam.  You further agree
```



not to use this data to enable high volume, automated or robotic electronic
processes designed to collect or compile this data for any purpose,
including mining this data for your own personal or commercial purposes.

Please note: the registrant of the domain name is specified
in the "registrant" section.  In most cases, GoDaddy.com, LLC
is not the registrant of domain names listed in this database.

## related domain names

godaddy.com   awsdns-39.org   awsdns-18.com   awsdns-52.co.uk   awsdns-10.net   icann.org
domainsbyproxy.com   internic.net

### Domains

Register Domain Name
Transfer Domain Name
View Domain Pricing
Bulk Domain Register
Whois Lookup
Name Suggestion Tool
Free with Every Domain
Domain Offers

### Infrastructure

Datacenter Details
Hosting Security
24 x 7 Servers Monitoring
Backup and Recovery

### Hosting & Products

Linux Hosting
Windows Hosting
Linux Reseller Hosting
Windows Reseller Hosting
Virtual Private Servers
Dedicated Servers
Managed Servers
Cloud Hosting
Website Builder
Business Email
Enterprise Email
SSL Certificates
Sitelock
CodeGuard

### Support

View Knowledge Base
Contact Support
Report Abuse
About Whois

**Follow us**

**Enter a Domain Name**     Go

LOGIN   OR

CREATE AN ACCOUNT

.xyz

Get your .XYZ at just
**$1.48!**

Copyright © Whois.com. All rights reserved
Privacy Policy | Legal Agreement

EXHIBIT 5







**swchme**  Follow

5 posts    42 followers    105 following

**Switch Inc.** Easily update payment info across thousands of sites following a card
replacement event. The most efficient way to sign up, sign in, and checkout.
switchme.com/switch-bring-financial-institutions-stronger-black-fridays/?
platform=hootsuite














EXHIBIT 6



**Who are we?**

We are a global company with plans to grow across the universe.

We can't yet say what we do exactly, but we have ruled out: Growing hair, farming in general, formal partnerships with Warren Buffett, NSA just say NO!, any pro sports, modeling, Federal Reserve consulting and Macklemore is not involved… Yet!

App Team

**Find out more…**

Your Name

Your Email

Subject

Send

Location: 47.6000° N, 122.1667° W

SWITCH™   Copyright © 2014 Switch Inc. All rights reserved.

EXHIBIT 7

**From:** Feather Lake
**To:** Feather Lake
**Subject:** RE: Request to contact NYSE
**Date:** Wednesday, February 28, 2018 12:07:55 PM
**Attachments:** image001.png



**FEATHER LAKE**
SENIOR PARALEGAL

o   +1 (702) 425-8429
m   +1 (702) 239-7618
e   feather@switch.com

---

**From:** Christopher Ix <cix@switch.com>
**Date:** Tuesday, February 27, 2018 at 12:32 PM
**To:** Irmina Blaszczyk <irmina@blueshirtgroup.com>
**Cc:** Gabe Nacht <gabe@switch.com>, Thomas Morton <thomas@switch.com>, Sam Castor <sam@switch.com>
**Subject:** Request to contact NYSE

Hi Irmina,

This morning I received a misleading Switch news article below from the NYSE Connect newsfeed.  Although the article states "Switch" and references the "SWCH" ticker, I believe the article is referring to a company called Switchme.com. Could you please contact NYSE to see if this can be rectified.

Thanks,

Chris



Switch Launches 'CardSavr'.

Tue Feb 27 09:08:30 2018 EDT

Switch has launched its proprietary Application Program Interface (API), "CardSavr".

The Company said that the CardSavr ROI (return on investment) model is structured specifically to increase revenue or redeem the significant revenue lost by issuers and merchants. Due to loss, theft and fraud billions of credits cards are reissued each year. The API also provides visibility to track and increase the usage of newly issued cards.

"Until CardSavr, banks and merchants were held hostage by archaic credit card networks' issuing and replacement processes and the inability alone to digitally help their cardholders manage online payments," said Chris Hopen, Chief Executive Officer of Switch, Inc. "This is the first time an API provides all card brands with direct control over a large source of potential and/or lost revenue. Our platform increases both their bottom line around credit card circulation issues and enhances cardholders' online purchasing experiences. All parties of the e-commerce ecosystem benefit."

Switch reported that the CardSavr API already supports thousands of online merchants, and by using anonymized crowdsourcing techniques coupled with its machine learning engine, the number of Switch-enabled merchant sites grows every day. CardSavr assists e-commerce sites without any need for integration by the merchants, resulting in a far greater reach for card updates than conventional methods currently employed by the card networks.

CardSavr's design brings many first-time benefits to card issuers:

-Immediate validation of customer card use

-Recaptured and increased revenue during the reissuing process

-Increased new card activations

-Provide cardholders an easier way to update cards at merchant sites

Financial executives who participated in the company's focus groups recognized potential for their businesses and customers. "The Switch application is extremely easy to use and provides a much faster way to pay and shop at card-on-file sites," added Mark Morrison, President and CEO of MountainCrest Credit Union and a focus group participant of the Switch application. "We appreciate how secure the technology is in terms of protecting users, their identities and activity, while helping to manage card activity online. We can envision how our members would find this technology extremely valuable and how the credit union could also benefit from an operational standpoint."

Switch CEO Chris Hopen is a technology veteran and entrepreneur who also founded Tappin, which was acquired by Globalscape in 2011. Hopen was also the Co-founder and Chief Technology Officer of Aventail, one of the first SSL VPN companies. Aventail was acquired by Sonicwall in 2007. Co-founder Dave Pool is founder of several successful technology companies, such as Spry Internet-in-a-Box and Data Channel.

More information:

www.cardsavr.com

switchme.com

((Comments on this story may be sent to newsdesk@closeupmedia.com))



**CHRISTOPHER IX**
DIRECTOR OF FINANCIAL PLANNING AND ANALYSIS

o  +1 (702) 479-3886
m  +1 (702) 305-1244
e  cix@switch.com

| | |
|---|---|
| **From:** | Sam Castor |
| **To:** | Feather Lake |
| **Cc:** | Kevin Everage; Anne-Marie Birk |
| **Subject:** | Fwd: Live Switch SUPERNAP News |
| **Date:** | Wednesday, December 20, 2017 6:55:18 AM |

Actual confusion moment with the credit card folks. We need to hit these guys hard.


Please excuse brevity and typos




   **SAM CASTOR**
EVP OF POLICY
DEPUTY GENERAL COUNSEL

o   +1 (702) 444-4102
m   +1 (702) 371-0724
e   sam@switch.com

Begin forwarded message:

**From:** PR <pr@supernap.com>
**Date:** December 20, 2017 at 6:38:53 AM PST
**To:** <Sam@switch.com>
**Subject:Live Switch SUPERNAP News**



Share:

### Switch, Inc. Adds Consumer Payments and Loyalty Executive, Kevin T. Knight, to Its Board of Directors

***One News Page*** | 12/20/2017

*...WIRE)--#banking--Gaining financial industry recognition, Switch, Inc... • Press Releases • One News Page[US]: Wednesday,...*

Share:

### Switch, Inc. Adds Consumer Payments and Loyalty Executive, Kevin T. Knight, to Its Board of Directors

*Worldnews.se **Online*** | 12/20/2017

*...of Credit Cards Reissued Each Year SEATTLE--(BUSINESS WIRE)--#banking--Switch, Inc., a financial technology company offering the...*

Share:

## Blog

### Snow Moto Racing Freedom

**A posting from: Melancholy Player** on ***Switch Italia*** | 12/20/2017 (4 hours, 25 minutes ago)

*...più pepato, per un'esperienza di gioco davvero piuttosto scialba.  L'articolo Snow Moto Racing Freedom proviene da Switch...*

Share:

EXHIBIT 8



November 22, 2017

Chris Hopen, Founder and CEO
David Pool, Founder
Switch, Inc.
615 2nd Avenue
Suite 600
Seattle, WA 98104
*VIA CERTIFIED US MAIL*

**Re: CEASE AND DESIST**

Dear Switch, Inc.,

I write to inform you that we were recently apprised of your business activities.  As you are likely aware, Switch, Ltd. ("<u>Switch</u>") designs, constructs, and operates the world's most powerful data centers and technology ecosystems. Since Switch commenced operations in early 2000, it has continuously used SWITCH and related trademarks in advertising and promoting its services.  Switch founder, Rob Roy, has over 400 patented and patent pending claims for Switch's services.  The SWITCH brand is well-known and well-respected in the colocation and telecommunications industries.  Switch's customers range from Fortune 100 companies to startups (http://www.supernap.com/clients.html).  Additionally, Switch is the only colocation facility in the world to receive Tier IV Gold Operations certification twice, per to the Uptime Institute (http://uptimeinstitute.com/TierCertification/operational-sustainability-certifications.php).

As we trust you appreciate, Switch has spent years and hundreds of millions of dollars building, advertising and promoting its technology, brand, and the SWITCH marks in print, broadcast media and on the internet through various Switch websites including, but not limited to the following:

| | | |
|---|---|---|
| **switch**.com | **switch**university.com | **switch**projects.com |
| **switch**.net | **switch**nv.com | **switch**.website |
| **switch**.co | **switch**lasvegas.com | **switch**.capital |
| **switch**dcs.com | **switch**lv.com | **switch**.best |
| **switch**supernap.com | **switch**reno.com | **switch**.partners |

In addition to statutory rights, SWITCH has acquired extensive reputational rights to the SWITCH brand in connection with datacenter services, and is entitled to oppose the use of marks which would be likely dilute the distinctive quality of Switch's famous mark and to further cause confusion and deception with the SWITCH mark.  Switch owns U.S. Registration No. **3,229,168** for the service mark SWITCH, "for providing telecommunications connections to a global computer network and colocation services."  Switch also owns

U.S. Registration No. **5,266,044** for the logo **switch**.  The mark SWITCH was first used in commerce as early as **August 31, 2003**.  Switch owns multiple United States Trademark Registrations for its SWITCH related marks. Switch's trademark registrations reflect the longevity and pervasiveness of Switch's brand.



The result of Switch's promotional efforts has been the establishment of a brand name, and family of marks known to represent the most premier service provider in the telecommunications, colocation, and cloud industries. Such activities have contributed to the notoriety and fame of the SWITCH trademark in the telecommunications and data center industries.

It has come to my attention that Switch, Inc. ("www.switchme.com") is using the name "Switch", "Switchme.com", and the logo ⚡switch to identify services similar to Switch's services, including computer services. Specifically, Switchme's website www.switchme.com not only incorporates the SWITCH trademark owned by Switch, but the website advertises a software application for online account payment profile management. Additionally, you are using SWITCH on your profiles on LinkedIn.

Your use of the trademark SWITCH and the confusingly similar logo ⚡switch is **not** authorized by Switch.

It is of the utmost importance that the SWITCH marks be protected to the fullest extent permitted by law. It is equally important that the public not be deceived into believing that there is some affiliation between Switch's business activities and your own. Upon initial review, these types of activities constitute trademark infringement and could subject you to significant liability. Given Switch's prominence, we are hard pressed to conclude your activities are not intentional, which could give rise to trebled damages, per statute.

Accordingly, we view your unauthorized activities as severe. We must resolve this issue with you immediately. Stop using the trademark SWITCH and the logo ⚡switch in any and all activities related to computer services, telecommunications, or any other service confusingly similar to Switch's service or marks, including on all social media platforms. Also transfer the domain www.switchme.com to Switch. We are willing to discuss potential reimbursement of your direct costs in acquiring the domain.

Switch desires to avoid litigation. Non-responsiveness, delay or public disclosure of this letter will force our hand. **Accordingly, please confirm receipt and respond as soon as possible regarding your compliance but in no event later than by 5:00 pm PST, on Friday, December 1, 2017**.

This letter does not waive legal rights of any kind and Switch reserves all rights to pursue any legal claims against you and any individual, corporation, or entities who are associated or affiliated with your business. Should you have any questions, I can be reached by phone at (702) 623-6801 or by e-mail at abirk@switch.com.

Awaiting your compliance,

Anne-Marie Birk
Associate General Counsel
Switch, Ltd.
702-623-6801

Enclosures

7135 South Decatur Blvd.  –  Las Vegas, Nevada 89118  –  702.444.4111  –  switch.com

# switch

7135 South Decatur Blvd.
Las Vegas, Nevada 89118



7009 0820 0002 3867 8794

UNITED STATES POSTAGE
02 1P
0000621132
MAILED FROM Z

NIL
11-2-717
12-8-17
12-18-15
RTS

Chris Hopen, Founder and CEO
David Pool, Founder
Switch, Inc.
615 2nd A
Suite 600
Seattle, W

98104-2219

NIXIE            981044056-1N        009 01/03/1

RETURN TO SENDER
UNCLAIMED
UNABLE TO FORWARD
RETURN TO SENDER

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Switch Inc.
615 2nd Avenue
Suite 600
Seattle, WA 98104.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☑ Certified Mail®        ☐ Priority Mail Express™
☐ Registered             ☐ Return Receipt for Merchandise
☐ Insured Mail           ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
(Transfer from service label)      7009 0820 0002 3867 8794

PS Form 3811, July 2013          Domestic Return Receipt